LYNN C. KLEIN, Plaintiff-Appellant, v. FAIR EMPLOYMENT PRACTICES COMMISSION et al., Defendants-Appellees.

(No. 59888;

First District (3rd Division)—August 7, 1975.

474

McGLOON, P. J., dissenting.

Cotton, Watt, Jones, King & Bowlus, and American Civil Liberties Union, both of Chicago (Helen Hart Jones, Peggy A. Hillman, and Judith M. Hawley, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Jerrald B. Abrams, Assistant Attorney General, of counsel), for appellees.

Scariano and Gubbins, of Chicago (Anthony Scariano, of counsel), for appellee School Board of Illinois School District No. 227.

Elaine K. Hyman, of Chicago, and Nancy B. Collins, Law Student, for *amicus curiae* National Organization for Women.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Lynn C. Klein, filed a complaint in the circuit court of Cook County seeking judicial review of an order of the Illinois Fair Employment Practices Commission (hereinafter the Commission) dismissing her charge of an unfair employment practice filed against Illinois School District No. 227 (hereinafter the school district). She alleged that the school district had discriminated against her on the basis of sex in its hiring of a male choral director for one of the high schools within its jurisdiction, violating Section 3(a) of the Fair Employment Practices Act (Ill. Rev. Stat. 1971, ch. 48, par. 853(a)) (hereinafter the FEPA). The trial court affirmed the Commission's order, and plaintiff appeals.

The gist of plaintiff's charge of discrimination involved the following facts. In early 1972, Rich Township High School, located within the jurisdiction of defendant school district, began interviewing applicants for the position of music choral director at a newly opened campus of the high school. Plaintiff interviewed for the position. The school district ultimately hired a male. In support of plaintiff's allegation that the school district discriminated against her, plaintiff attached to her charge filed with the Commission a copy of a memorandum prepared by one Jay Hoel and circulated among the nearby school districts during the period of the job opening. At this time Hoel was employed as a music teacher and director at one of the campuses at Rich Township. The memorandum, typed on plain white stationary, read as follows:

"Memo

Date: 2 February 1972

To: Conference Directors

From: Jay Hoel

Re: This is to inform you that this coming September Rich Township expects to open their third campus—Rich South.

The school will be located approximately three miles west of Park Forest on Sauk Trail.

Should you know of any outstanding band and/or choral people (preferably male) who might be interested please ask them to immediately contact:

> Mr. Gregory H. Sloan, Assistant Superintendent
> Rich Township High School
> Sauk Trail at Westwood Drive
> Park Forest, Illinois 60466
> Phone: 748-5800"

Plaintiff learned of the memorandum after her application for the position had been rejected by the school district. It is conceded that Hoel was one of the people with whom plaintiff personally interviewed.

After the charge was filed with the Commission, an investigator was assigned to the case. Upon the completion of his investigation, the investigator recommended to the Commission that the charge be dismissed. The Commission subsequently notified plaintiff that at a recent meeting it had dismissed the charge for "lack of substantial evidence." The notification did not contain the minutes of the meeting or specify any reasons underlying the Commission's conclusion. A representative of plaintiff immediately requested that the Commission reconsider its decision. The Commission replied by letter that it would be unable to do so since pursuant to its construction of the FEPA it would lose jurisdiction of her case because of passage of time before it could act upon her request. Instead the Commission advised plaintiff to seek judicial review pursuant to the provisions of the Administrative Review Act if she felt aggrieved by its order of dismissal. Plaintiff thereupon responded by letter that the Commission's investigation had been deficient since the investigator had never contacted the people whose names she had supplied who would support her allegations of discrimination. This letter went unanswered.

Accordingly, plaintiff filed a complaint for judicial review, naming as defendants the school district and the Commission. The first count alleged error on the part of the Commission in dismissing her charge, and the second count challenged the constitutionality of the procedures utilized by the Commission in investigating a grievance filed before it. Attached to her complaint were the written charge filed with the Commission, a copy of the Hoel memorandum, the Commission's notice of dismissal of the charge, and the Commission's letter declining to reconsider its order of dismissal. The Commission filed with its answer the

purported full record of proceedings before it in this cause. It consisted of three documents: plaintiff's written charge, the Commission's letter to the school district informing it of its assignment of an investigator to the case and requesting all pertinent facts and records, and the Commission's notice of dismissal of the charge. The school district filed a separate answer to the complaint, and under the heading "Affirmative Defense" listed nine exhibits which allegedly had been filed before the court. No allegations or statements of legal theory accompanied these exhibits to indicate their relevance or propriety. Subsequently, the Commission asked leave to amend its answer to include as part thereof its investigator's charge report file and his affidavit. The affidavit had been prepared two days prior to the request to amend the answer. The trial court allowed the Commission's motion to amend its answer. Plaintiff then moved to strike the school district's answer insofar as it contained matters in addition to those contained in the record of proceedings filed by the Commission. The motion was denied, and the school district's pleadings were ordered to be marked as Exhibit A of the record.

Plaintiff moved for summary judgment. Attached to her motion were five affidavits also outside the report of proceedings filed by the Commission. The school district moved to strike her motion and affidavits. No ruling was made on these motions. Eventually, the trial court affirmed the decision of the Commission that no substantial evidence existed to support plaintiff's charge of an unfair employment practice. At the time of the ruling, the trial court indicated that it had not considered the exhibits filed by the school district in making its decision.

Plaintiff contends on appeal that the trial court erred in affirming the Commission's order in the absence of an adequate record, in concurring with the Commission that her charge was insufficently supported, and in implicitly upholding the constitutionality of the Commission's procedures in investigating the charge filed before it. The school district takes the opposing position on all these issues. The Commission argues that the investigative procedures were constitutional. The National Organization of Women has filed an amicus brief in this court on behalf of plaintiff.

However, before we can proceed to a consideration of these issues, we must direct our attention to an issue which the Commission now raises for the first time in this cause, namely that the trial court lacked jurisdiction to review the Commission's decision to dismiss a charge of an unfair employment practice. At the root of this argument is the admitted absence of an adequate record to review, a situation which the Commission posits will attend every dismissal of a charge. This position is directly contrary to the Commission's earlier expressed view that

judicial review is permitted, as stated in its letter to plaintiff refusing her petition to reconsider its dismissal order, and the Commission's own conduct in the trial court.

■■ It is fundamental that absolute lack of subject matter jurisdiction can be raised at any time in the proceedings. (*Lawn Savings & Loan Association v. Quinn* (1967), 81 Ill.App.2d 304, 225 N.E.2d 683.) Even if plaintiff is correct in charging that subject matter jurisdiction is not being completely challenged in this cause, an appellee can rely upon any argument on appeal in support of a judgment as long as a factual basis for such a point was before the trial court. (*Shaw v. Lorenz* (1969), 42 Ill.2d 246, 246 N.E.2d 285; *In re Estate of Waitkevich* (1975), 25 Ill.App.3d 513, 323 N.E.2d 545.) Hence the question should be resolved.

■■ Each statute must be carefully examined to discover the legislature's intent to restrict judicial review of administrative action. (*Heikkila v. Barber* (1953), 345 U.S. 229.) While it is often said that barring constitutional impediments the legislature can preclude judicial review (see *Mount St. Mary's Hospital v. Catherwood* (1970), 26 N.Y.2d 493, 511, 518-519, 311 N.Y.S.2d 863 (Fuld, C. J., concurring)), such intent must be made specifically manifest, and persuasive reason must exist to believe such was the legislative purpose. (*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136.) Only upon a showing of clear and convincing evidence of contrary legislative intent should the courts restrict access to judicial review. *Rusk v. Cort* (1962), 369 U.S. 367.

■■ Thus, we must consider the governing statutory provisions. Section 10 of the FEPA (Ill. Rev. Stat. 1973, ch. 48, par. 860) states that *any complainant* or respondent may apply for and obtain judicial review of *an order* of the Commission in accordance with the provisions of the Administrative Review Act. This broad language certainly embraces the present situation. Plaintiff's charge qualified her as a complainant under the FEPA. (See Ill. Rev. Stat. 1973, ch. 48, pars. 852(b), 853(a).) There also can be no doubt that the dismissal of the charge operated as an "order" for purposes of this provision. (*Rochester Telephone Corp. v. United States* (1939), 307 U.S. 125, 141-43.) Indeed, the legislature itself refers to such action as an "order." Ill. Rev. Stat. 1973, ch. 48, par. 858.01(a).

■■ The Administrative Review Act also entitles one to review in this situation. Section 2 of that statute (Ill. Rev. Stat. 1973, ch. 110, par. 265) states that the Act shall govern *every* action to review judicially a *final decision* of *any* administrative agency where the statute creating or conferring power in that agency adopts by express reference the provisions of the Administrative Review Act. Another provision of the Administra-

tive Review Act defines an administrative decision to be any decision, order, or determination rendered in a particular case which affects the legal rights, duties, or privileges of parties and which terminates the proceedings before the administrative agency. (Ill. Rev. Stat. 1973, ch. 110, par. 264.) The dismissal of a charge of an unfair employment practice for lack of substantial evidence qualifies as an administrative decision. The legal rights and duties of the complainant and respondent are pragmatically settled by such an order. (See *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 149.) Finality is achieved since the proceedings are also terminated at that point. Since section 10 of the FEPA, as shown, expressly adopts the provisions of the Administrative Review Act, all the elements of reviewability set out in section 2 of the Administrative Review Act are met.

■■ The Commission, despite its earlier contrary view, now admonishes us that the availability of judicial review would necessarily hamper its investigative efforts since it would be unable to guarantee total confidentiality to the people cooperating in an investigation. Such a policy argument is better addressed to the legislature. It is our duty to construe and interpret a law as it is written. Unlike the conference and conciliation stage of the proceedings (Ill. Rev. Stat. 1973, ch. 48, par. 858), there is nothing in the FEPA which expressly or implicitly mandates that the entire investigative phase of the proceedings is to be totally enshrouded in secrecy. The legislature addressed itself to the fears here expressed by the Commission by expressly making it an unfair employment practice to retaliate against one who cooperates with the Commission during its investigation of a charge. (See Ill. Rev. Stat. 1973, ch. 48, par. 853(d).) Moreover, the secrecy argument is further impaired by the fact that agencies in other jurisdictions entrusted with the function of the Commission in their State freely disclose the contents of their investigators' files when a dismissal of a charge for lack of evidence is challenged in the courts. (See *Lesniak v. Fair Employment Practices Com.* (1961), 364 Mich. 495, 111 N.W.2d 790; *Hollon v. Pierce* (1967), 257 Cal.App.2d 468, 64 Cal.Rptr. 808; *Williams v. Commission on Civil Rights* (Super. Ct. New Haven County 1969), 28 Conn.Supp. 341, 260 A.2d 889, *aff'd* (1969), 158 Conn. 622, 262 A.2d 183.) We finally must note that this argument is being advanced by the Commission despite the fact that it voluntarily moved in the trial court to introduce the charge report files and affidavit of its investigator. We cannot permit this secrecy argument urged by the defendants to distract the Commission and the courts of this State from fulfilling the true purpose of the FEPA.

The Commission next offers as justification for its position the admitted

absence of an adequate record in this case upon which proper review can be made. The Commission proposes that this deficiency will attend every appeal of the Commission's dismissal order.

This argument is wholly unpersuasive, as is the legal authority the Commission claims supports it. In *McIntosh v. State of Illinois Fair Employment Practices Com.* (1969), 108 Ill.App.2d 269, 247 N.E.2d 171, the Commission dismissed a charge after the grievance, found to be factually supported, had apparently been settled at the conference and conciliation phase of the proceedings. This court sustained the trial court's dismissal of the plaintiff's complaint for judicial review on the ground that the complainant had failed to exhaust his remedies before the Commission before seeking judicial relief. We found that the Commission's dismissal of the charge on the basis of a settlement reached at conference and conciliation was not a final order of the Commission subject to review. We also noted that any appeal from that stage in the proceedings would not result in a reviewable record, since the legislature had expressly decreed that anything that transpired at that meeting not be disclosed without the consent of the respondent. (Ill. Rev. Stat. 1971, ch. 48, par. 858(a), amended and resectioned, Ill. Rev. Stat. 1973, ch. 48, par. 858.) Thus we held that plaintiff's first step should have been to contest the settlement order in proceedings before the Commission before seeking judicial relief.

■■ In the present case, however, the order is final and a record can be adequately fashioned. The Commission must supply the court with a statement of reasons supporting its decision to dismiss the charge. Although the FEPA does not expressly require this, the orderly functioning of the process of review requires "that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." (*Securities & Exchange Com. v. Chenery Corp.* (1943), 318 U.S. 80, 94; *Reinhardt v. Board of Education* (1975), 61 Ill.2d 101, 329 N.E.2d 218.) Having been entrusted with the duty of review, the court must be given a basis to evaluate the agency's action. (*Phelps Dodge Corp. v. National Labor Relations Board* (1941), 313 U.S. 177; *Northeast Airlines, Inc. v. Civil Aeronautics Board* (1st Cir. 1964), 331 F.2d 579; *Bachowski v. Brennan* (3rd Cir. 1974), 502 F.2d 79, aff'd in part, rev'd in part on other grounds, *Dunlop v. Bachowski* (1975), 421 U.S. 560, 44 L.Ed.2d 377, 95 S.Ct. 1851.) The court must know what a decision means before it can determine its correctness. (*Secretary of Agriculture v. United States* (1954), 347 U.S. 645.) Besides facilitating judicial review, requiring written reasons will assure careful administrative consideration. 2 Davis, Administrative Law Treatise §§ 16.05, 16.12, at 444, 476 (1958).

The Commission finally contends that judicial review, even if authorized by statute, should be prohibited on the ground that it constitutes a violation of the separation of powers doctrine. They cite as an analogy the purported absolute discretion exercised by a prosecutor in this jurisdiction in determining whether or not to institute criminal proceedings against an individual.

■■ In our view, the doctrine of prosecutorial discretion, at best, should be limited to those civil cases which, like criminal ones, involve the vindication of governmental interest rather than the protection of individuals rights. (*Bachowski v. Brennan.*) The statute in our case not only requires the Commission to take action but also sets forth the means. (See *Adams v. Richardson* (D.C. Cir. 1973), 480 F.2d 1159 (en banc).) The Commission is duty-bound to proceed in a straight-forward manner once a charge has been properly filed with it. (Ill. Rev. Stat. 1973, ch. 48, pars. 858, 858.01(a).) For instance the Commission "shall" promptly institute an investigation to discover and evaluate the facts underlying a charge of discrimination. If it subsequently determines that the charge is supported by substantial evidence, the Commission "shall" endeavor to eliminate the effect of the practice and avoid its repetition through conference and conciliation with the parties. If its efforts prove unsuccessful at that stage, the Commission "shall" institute a complaint in the matter.

Therefore, we hold that a complainant is entitled to judicial review of an order of the Commission dismissing a charge of unfair employment practice for lack of evidence in accordance with the provisions of the Administrative Review Act. Consequently, we need not decide whether judicial review would have been available through the procedures of writ of certiorari or mandamus.

We note that our holding that judicial review is properly available for a complainant whose charge of unfair employment practice has been dismissed by an administrative agency is in conformity with courts in other jurisdictions which have expressly or implicitly ruled on the question. *Matter of Jeanpierre v. Arbury* (1958), 4 N.Y.2d 238, 173 N.Y.S.2d 597; *Lesniak v. Fair Employment Practices Com.; Strong v. Massachusetts Commission Against Discrimination* (1967), 351 Mass. 554, 222 N.E.2d 885; *Hollon v. Pierce; Williams v. Commission on Civil Rights; Fetterolf v. Josephs* (C. Pl. # 6, Phil. County 1950), 75 Pa. D. & C. 76.

In holding that the Commission does not enjoy the right of absolute unreviewable discretion in deciding whether to dismiss a charge, we do not mean to imply that the Commission has no discretion in making such a determination. Section 8 of the FEPA provides that a charge shall be dismissed if the Commission determines after investigation that there

is a lack of substantial evidence to support it. This evidentiary standard was left deliberately vague by the legislature, we believe, to permit the Commission some degree of discretion in ascertaining and evaluating the facts. Upon review, a court cannot try the case de novo or question the wisdom of the Commission's judgment. Rather the proper scope of review should be to ascertain from an adequate record whether the Commission's order of dismissal is arbitrary, capricious, or an abuse of discretion. See *Dunlop v. Bachowski* (1975), 421 U.S. 560, 44 L.Ed.2d 377, 95 S.Ct. 1851; *Williams v. Commission on Civil Rights.*

Once it is resolved that the Commission's action in dismissing a charge is subject to at least partial judicial review, it is indisputable, as the Commission readily concedes in this court, that this case must be reversed and remanded to the Commission for lack of an adequate record. (*Reinhardt v. Board of Education.*) As submitted, the record does not disclose what reasons underlie the Commission's decision to dismiss plaintiff's charge. Furthermore, the investigator's report was filed not as part of the record by the Commission but as support for an affidavit of the investigator in a procedure clearly improper under the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Indeed all the parties in the trial court improperly affixed affidavits to their pleadings that were dehors the record.

Plaintiff also contends that it was error for the Commission to refuse to reconsider its decision to dismiss her charge. She alleges that the refusal was predicated upon the Commission's erroneous conclusion that section 8.02(f) of the FEPA precluded it from reconsidering its initial order. However, the record shows that the refusal was based upon the Commission's construction of a different subsection of section 8 by which it would purportedly lose jurisdiction of the cause through passage of time had it attempted to reconsider its order. Neither defendant has argued in its brief in this court that the Commission has no power to reconsider an order dismissing a charge. In any event, since this cause is being reversed and remanded to the Commission for further proceedings, we need not decide whether the Commission erred in refusing to reconsider its original order of dismissal.

Plaintiff next challenges the constitutionality of certain procedures of the Commission's investigation. She charges that she has a constitutional right to be informed of the preliminary results of the investigation and to be present and participate at the meeting of the Commission when that body convenes to act upon the recommendations of its investigator. ■■ Rights of discovery, confrontation, cross-examination, and other elements of due process attending judicial and quasi-judicial proceedings do not apply in investigative proceedings. (*Hannah v. Larche* (1960),

363 U.S. 420.) Investigations conducted by administrative agencies attempt to discover and produce evidence not for the purpose of determining whether facts exist to justify the institution of a complaint. (*Genuine Parts Co. v. Federal Trade Com.* (5th Cir. 1971), 445 F.2d 1382.) An efficient investigation obviously could not be achieved if every investigation could be converted into a trial. See *Bowles v. Baer* (7th Cir. 1944), 142 F.2d 787; *Haines v. Askew* (M.D. Fla. 1973), 368 F.Supp. 369, *aff'd* (1974), 417 U.S. 901.

■■ In our view the above cases are authority that plaintiff has no constitutional right of participation in the investigation of her charge. Such participation would entitle every complainant to a hearing regardless of the validity of the allegations of one's charge. (See *Marshall v. Fair Employment Practice Com.* (1971), 21 Cal.App.3d 680, 98 Cal.Rptr. 698.) It would be impossible to conduct an efficient investigation. Such participation is neither required by the Constitution nor by the legislature.

We appreciate plaintiff's concern that a vehicle must exist to enable a complainant to bring to the Commission and ultimately the court's attention the fact that an investigator's report is predicated upon erroneous, incomplete, or no facts. Yet sufficient means do exist through the requirement that a Commission supply written reasons justifying the dismissal of a charge and through the presumed right of the complainant to petition the Commission to reconsider its order. Of course, the ultimate safeguard is plaintiff's right to judicial review.

For all the reasons stated above, the order of the circuit court of Cook County is reversed and the cause remanded to the trial court with directions to remand the cause of the Commission for further proceedings in acccordance with the views expressed in this opinion.

Order reversed and cause remanded.

DEMPSEY, J., concurs.

Mr. PRESIDING JUSTICE McGLOON, dissenting:

The majority's opinion is predicated upon its initial holding that the legislature intended judicial review of the Commission's decision to dismiss a charge after an investigation disclosed the lack of substantial evidence of an unfair employment practice. The legislative intent is found in the statutory provisions that any complainant may obtain judicial review of a Commission order. The majority acknowledges that the legislature may restrict judicial review of administrative action if the legislature's intent is shown by clear and convincing evidence, but does not find such evidence. The majority sees its duty to interpret the law as it

is written, and therefore discounts the secrecy argument advanced by the Commission. I cannot agree with my colleagues. It is my belief that the legislature intended that such a Commission decision to dismiss should not be open to review inasmuch as the secrecy of the Commission's investigation of the charge precludes the making of a record subject to review.

The primary feature of the Commission's procedures under the Act is that its investigation of the charge and the following conciliation meeting with the parties are to be conducted in secrecy. The Act provides that "[w]hat occurs in the conference or conciliation meeting shall not be disclosed by the Commission unless the complainant and respondent agree in writing that such disclosure be made." (Ill. Rev. Stat. 1973, ch. 48, par. 858.) The Act is implemented by the Commission's rules of practice, of which section 2.2(5) further provides that "[n]o stenographic report or recording shall be taken of the proceedings of any conciliation conference." The reason for such confidentiality is succinctly stated in the first section of the Act, which provides: "It is also the public policy of this State to protect employers, labor organizations and employment agencies from unfounded charges of discrimination." Ill. Rev. Stat. 1971, ch. 48, par. 851.

By not keeping a reviewable record of the precomplaint proceedings, the Commission is protecting the respondent from the unfavorable publicity which would attend the publication of the fact that charges, whether substantiated or not, were filed against him. If the investigation finds substantial evidence that an unfair employment practice has been committed, the respondent must be given an opportunity to attempt to effectuate a settlement in private. If and only if the respondent cannot or will not remedy the situation may the Commission file a complaint against respondent and hold public hearings. Under the Act, the record generated by the public hearings and the Commission's decision based upon the record are reviewable by the courts under the Administrative Review Act.

In my opinion, the legislative intent of the Act was that there should be secrecy throughout the precomplaint proceedings in order to encourage the amicable settlement of unfair employment practices charges, and to protect respondents from the dissemination of any information concerning unfounded charges placed with the Commission. To require a record to accompany the Commission's decision to dismiss a charge for lack of substantial evidence would be contrary to the procedures intended by the legislature.